[No. 9311.    Department One.    April 7, 1911.]

C. H. CLEMONS et al., Respondents, v. GRAYS HARBOR & PUGET SOUND RAILWAY COMPANY, Appellant.[1]

RAILROADS—CROSSINGS—CONTRACTS—BREACH.    Where a railroad company agreed to construct and maintain a crossing according to specified plans, and after its construction the crossing collapsed, the fact that it was constructed according to the plans does not relieve the company from liability for failure to maintain it.

RAILROADS—RIGHT OF WAY—CONVEYANCE—CONSTRUCTION—STIPU-LATED DAMAGES.    A provision in a right of way deed that the grantee was "not to interfere" with the grantors' use of an intersecting logging road, and should pay $1,000 per day as stipulated damages, "if such interference occurs," has no application to a breach of other provisions requiring the grantee to construct and maintain a crossing, which collapsed and interrupted the use of the logging road for four days, in the absence of evidence that the collapse was the result of the grantee's "interference," where the deed provided for revocation or forfeiture for failure to strictly comply with its terms; since the deed did not clearly express an intention that the damage clause was to apply in case of any breach except an affirmative or physical act of "interference" (DUNBAR, C. J., dissenting).

[1]Reported in 114 Pac. 865.

DAMAGES—STIPULATED DAMAGES—CONSTRUCTION OF CONTRACT.  A provision for drastic stipulated damages will not be extended by construction to embrace matters not clearly within its terms.

RAILROADS—CROSSINGS—CONTRACTS—BREACH—NOMINAL DAMAGES. Upon breach of a stipulation by a railroad company to maintain a crossing, which collapsed from an undisclosed cause, the company is liable for nominal damages.

DAMAGES—STIPULATED DAMAGES—PENALTY.  A provision in a right of way deed whereby the grantee agreed to pay $1,000 a day for each day it interfered with the operation of an intersecting logging road, as liquidated damages and not as a forfeiture or penalty, is an agreement for stipulated damages.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered October 21, 1910, in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for damages.   Reversed.

*Bridges & Bruener* (*Bogle, Merritt & Bogle,* of counsel), for appellant, contended, among other things, that it was admissible to show by extrinsic evidence that the stipulation for damages was unreasonable and in the nature of a penalty. *Hathaway v. Lynn,* 75 Wis. 186, 43 N. W. 956, 6 L. R. A. 551; *De Graff, Vrieling & Co. v. Wickham,* 89 Iowa 720, 52 N. W. 503, 57 N. W. 420; *Halff v. O'Connor,* 14 Tex. Civ. App. 191, 37 S. W. 238; *Wilcox v. Walker* (Tex. Civ. App.), 43 S. W. 579; *Collier v. Betterton,* 87 Tex. 440, 29 S. W. 467; *Jennings v. Willer* (Tex. Civ. App.), 32 S. W. 24; *Foley v. McKeegan,* 4 Iowa 1, 66 Am. Dec. 107; *Hicks v. Monarch Cycle Mfg. Co.,* 176 N. Y. 111, 68 N. E. 127; *Lee v. Carroll Normal School Co.,* 1 Neb. (Unof.) 681, 96 N. W. 65; *Coen & Conway v. Birchard,* 124 Iowa 394, 100 N. W. 48; *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490; *Wagner Co. v. Cawker,* 112 Wis. 532, 88 N. W. 599; *Sanford v. First Nat. Bank of Belle Plaine,* 94 Iowa 680, 63 N. W. 459; *Monmouth Park Ass'n v. Wallis Iron Works,* 55 N. J. L. 132, 39 Am. St. 626, 19 L. R. A. 456; *Muse v. Swayne,* 2 Lea 251, 31 Am. Rep. 607; *Disosway v. Edwards,* 134 N. C.

254, 46 S. E. 501; *Burrill v. Daggett*, 77 Me. 545; *Perkins v. Lyman*, 11 Mass. 76, 6 Am. Dec. 158.

*W. H. Abel*, for respondents.

Gose, J.—On the 12th day of April, 1909, the plaintiffs owned certain land, and a logging railroad which they were operating for the purpose of hauling logs to, and placing them in, the Chehalis river. On that day the plaintiffs and the defendant, a public service corporation, entered into a contract, wherein and whereby the plaintiffs conveyed certain of its land to the defendant for a right of way for its railroad; and the defendant, as a part of the consideration for the conveyance of the land, agreed to do and refrain from doing certain acts. The part of the instrument material to the questions here presented is as follows:

"Witnesseth: That first parties for the consideration of the sum of fifteen hundred dollars ($1,500) to them in hand paid by the second party, and for the other considerations hereinafter mentioned, which considerations are to be considered as conditions subsequent, do hereby grant, sell, convey, confirm and quitclaim unto second party, its successors and assigns, the following described real estate, . . .

"To have and to hold, unto the said second party, its successors and assigns forever upon the considerations and subject to the limitations hereinafter provided, which conditions and limitations are to be construed as conditions subsequent, and upon failure of second party, its successors and assigns, to strictly perform the same, this deed and the rights conveyed hereby, are subject to revocation and forfeiture by first parties, their heirs or assigns. . . .

"Second party agrees to construct and maintain the necessary crossing where its line intersects the logging railroad of first parties, said crossing to be an under-crossing and to be built in accordance with the plans submitted by second party to first parties according to a blue print this day furnished, which has been marked 'Exhibit B,' and said crossing is to be maintained by second party, its successors and assigns, and second party, for itself, its successors and assigns, assumes the responsibility in connection with the

maintenance and operation of said crossing and to furnish water barrels upon said crossing to safe-guard the same from fire. Where the lines of the first parties and of the second party intersect, it is agreed by second party that it shall and it does hereby allow first parties, their heirs and assigns, to maintain and operate their logging road as the same is now located, maintained and operated, . . .

"It is further agreed that, whereas first parties are engaged in extensive logging operations, the extent of which is well known to second party, and any delay or interference with said logging operations or with the railroad or first parties' use in connection therewith, would cause great damage and loss of profits to first parties, which damage and loss of profits would be difficult of ascertainment;

"Now, therefore, second party agrees not to interfere with the use by first parties of their logging railroad in such manner that first parties cannot haul logs over said railroad to the Chehalis river, but if such interference occurs, the second party hereby agrees to pay to first parties therefor the sum of one thousand dollars ($1,000) per day for each day of such interference and a proportionate part thereof for any part of a day of such interference, and said sum is hereby agreed upon as liquidated damages and not as a forfeiture or penalty, and it is agreed between the parties hereto that by such interference first parties would actually suffer loss in the amount aforesaid."

The defendant entered into the possession of the land conveyed, and constructed its railroad and an overhead crossing for the logging road at the point of intersection of the two roads. On April 12, 1910, the crossing in part collapsed, so that for a period of four days the logging road could not be operated. A few days later the plaintiffs commenced this action for the purpose of recovering the sum of $4,000, which they claimed under the liquidated damage clause of the contract.

The defendant admits the making of the contract, admits that it constructed its road and the crossing for the logging road at the point of intersection of the two roads, and admits that the crossing fell, so that the logging road could not be operated for the period alleged. It alleges affirma-

tively, that it constructed the crossing according to the blue print referred to in the contract; that the work was done in a careful and substantial manner; that the damages agreed upon were unreasonable and unlawful; and that the damages did not exceed fifty dollars per day. This was put in issue by the reply. The plaintiffs offered evidence tending to show that the crossing was negligently constructed, but before resting their case this testimony was withdrawn. After the plaintiffs rested, the defendant offered to prove the facts embraced in its affirmative pleading, and that the damages could be ascertained. The offer was denied, and a judgment was entered in favor of the plaintiffs for $4,000, being at the rate of $1,000 per day for the four days' suspension of the logging road.

The discussion has taken a somewhat wide range upon the part of the appellant. It argues that it is not liable under the contract for a suspension of the logging operations caused by the act of God or of the public enemy. That question is not presented by the record. Again, the appellant says:

"The cause of the interruption in the operation of the logging railroad was an earth slide on the upper part of the crossing."

We have not found such evidence in the record. It is true that one of the respondents' witnesses testified that the collapse of the crossing was caused "by a slide or the piling giving way;" and another testified that it was caused "from lack of penetration of the piling." Later, however, this testimony was withdrawn. We express no opinion upon the competency or materiality of such evidence.

The contract, however, has been breached by the appellant. It is clear from reading it as an entirety that the appellant could not relieve itself from liability by constructing the crossing according to the blue print, for the contract expressly provides "that said crossing is to be maintained by second party [the appellant] its successors and

assigns; and second party for itself, its successors and assigns, assumes the responsibility in connection with the maintenance and operation of such crossing."

Passing to the pivotal point in the case, we cannot think that the respondents are entitled to recover under the liquidated damage clause upon the facts stated. The showing made is, that the appellant constructed the crossing; that it fell, and that the respondents' logging operations were suspended for four days. The cause of the fall of the crossing is not shown. A reference to the habendum clause of the deed discloses that the conditions and limitations in the instrument are to be treated as conditions subsequent, and that upon the failure of the appellant to strictly perform them, the "deed and the rights conveyed are subject to revocation and forfeiture." Again, near the end of the contract, it is provided that the "agreements to be performed" by the appellant are a part of the consideration for the instrument, "and are material considerations therefor," and that upon the failure of the appellant to strictly comply with the terms "of this instrument," the deed, at the option of the respondents, "is subject to revocation and forfeiture."

Further analyzing the instrument, we find that the appellant agreed to "construct and maintain" the necessary crossing at the point of intersection of the roads, and that it "assumes the responsibility in connection with the maintenance and operation of said crossing." There is no provision, however, to the effect that, if it fails to maintain the crossing and the logging operation is suspended thereby, the liquidated damage clause shall apply. In the clause which immediately precedes the damage clause it is agreed that the respondents are engaged in extensive logging operations, and that any "delay" or interference with such logging operations or with the railroad or first parties' "use in connection therewith," would cause the latter great damages and loss of profits, and that the damages and loss of profits would be difficult of ascertainment. In the damage clause following

this language, the word "delay" is omitted, and the appellant agrees "not to interfere" with the respondents' use of the road in such manner that they cannot haul logs over the same, and agrees that, "if such interference occurs," the appellant will pay to them the sum of $1,000 per day for each day of "such interference, and a proportionate part thereof for any part of a day of such interference" as liquidated damages, and that the respondents would actually suffer to that extent "by such interference." To recapitulate, it appears that, for certain breaches of the contract upon the part of the appellant, the deed is subject to revocation and forfeiture at the option of the respondents. This provision, as we have seen, is twice inserted. Whether the stipulation is enforceable against a public service corporation when the land conveyed has become a part of its line of road, is not before us. Again, as we have pointed out, the appellant agreed to construct and maintain the necessary crossings, and to emphasize this obligation upon its part it "assumes the responsibility in connection with the maintenance and operation of such crossing." It would seem that, if it had been intended that the damage clause should apply if the operation of the respondents' road was suspended by a breach of any one of the obligations assumed by or imposed upon the appellant, such intention would have been clearly expressed, and not left to be gathered from words of doubtful meaning. The damage clause is a drastic one, and it will not be extended by construction to embrace matters not clearly within its terms. We need not speculate as to what delinquencies it may cover. It suffices to say that it is not applicable to the facts before us.

Upon the evidence, the respondents were entitled to a judgment for nominal damages for the failure of the appellant to maintain the crossing. In addition to nominal damages, they may, upon proper proof, recover their actual damages; and if they can show that the crossing fell through the "interference" on the part of the appellant, they can re-

cover the liquidated damages.    The word "interference" here used evidently has reference to some affirmative or physical act upon the part of the appellant.    It is clear that the parties intended to stipulate for liquidated damages and not for a penalty.    *Madler v. Silverstone*, 55 Wash. 159, 104 Pac. 165.

The judgment is reversed, with directions to grant a new trial, and to permit the parties to recast their pleadings if they desire.

MOUNT and PARKER, JJ., concur.

DUNBAR, C. J. (dissenting)—It is inconceivable to me that that portion of the contract providing for stipulated damages was made with reference to any affirmative action on the part of the railway company, or that it ever entered into the mind of either party to the contract that the railway company would do so unusual a thing as to purposely break down or blow up the structure which was the subject of the contract and which it had so firmly bound itself to maintain. The majority seem to think that, because the deed was revocable for certain breaches of the contract, and because this provision was twice inserted and the provision in relation to liquidated damages was inserted but once, the first provision in some measure weakens the force and changes the otherwise obvious construction of the latter clause.    I think there is nothing whatever inconsistent between the two provisions, and that the obligation to maintain, instead of being inconsistent, is a basis for the contract for liquidated damages.    It can readily be seen that the main solicitude on the part of respondents was to be protected against an interference in any way with their logging operations.    And according to the contract, if it appeared that the railway company was not taking the precautionary measures provided for, and danger to the operation of the logging business was threatened, it was within the power of the respondents to avert that threatened danger by revocation.    That was only one of the

rights they had under the contract.   But it was not their bounden duty to keep a surveillance over the railway company in this regard.   They had the right of revocation, but they had the further right to compensation in case the bridge was not safely maintained and injury resulted.   It seems to me that the plain provisions of the liquidated damage contract have been destroyed by a strained construction of the first provisions of the contract.   I therefore dissent.